IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CINDY TORREY<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security<br><br>Defendant. | MEMORANDUM OPINION AND ORDER<br><br><br><br><br>Case No. 2:07-CV-360 DB |

Plaintiff, Cindy Torrey, filed a timely appeal in this Court seeking review of the Commissioner of Social Security's decision to deny her application for Disability Insurance Benefits ("DIB"). *See* 42 U.S.C § 405(g). Plaintiff initially filed an application for DIB on April 13, 2000 alleging disability since December 31, 1998. (R. 85.) The application eventually came before an Administrative Law Judge ("ALJ") who found Plaintiff was not entitled to a period of DIB. (R. 17.) The ALJ's decision became that of the Commissioner's when, in a letter dated March 29, 2007, the Appeals Council rejected Plaintiff's request for review of the ALJ's decision. (R. 6.)

Plaintiff now seeks the review of this Court alleging error on the part of the ALJ in four areas: (1) the ALJ failed to properly evaluate the opinion of Dr. Connor, one of her treating

physicians, (2) the ALJ improperly evaluated her credibility, which (3) led to an improper evaluation of her residual functional capacity ("RFC"), and (4) the ALJ failed at step five of his sequential analysis to identify jobs consistent with Plaintiff's RFC.

A hearing was held before this Court on May 27, 2008. Mr. John Borsos represented Plaintiff. Mr. Thomas Inman represented the government. Having considered the parties' briefs, the administrative record, the arguments of counsel, and the relevant law, the Court AFFIRMS the Commissioner's decision.

## I. STANDARD OF REVIEW

In reviewing a Commissioner's decision, a district court must determine (1) whether the ALJ's findings regarding Plaintiff's application for DIB are supported by substantial evidence and (2) whether the ALJ applied proper legal standards in reaching his decision. *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1991). Substantial evidence is defined as evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* Evidence is not considered substantial if it is overwhelmed by other evidence or if it is a mere conclusion. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990) (citing *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir. 1986)). The reviewing court may not "reweigh the evidence or substitute its discretion for that of the [ALJ's]." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2002) (quoting *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

## II. LEGAL STANDARD FOR DETERMINING DISABILITY

An individual is under a disability only if that individual can establish that she has a

physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d); *see Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002) (providing that both impairment and inability to work must last twelve months). Claims of disability must be supported by medical signs and findings established by medically acceptable clinical or laboratory diagnostic techniques that show the existence of a medical impairment. Social Security Act § 223(d)(5)(A), as amended, 42 U.S.C § 423(d)(5)(A).

The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). "[I]f a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

The first three steps require the decision maker to determine whether the claimant (1) has engaged in substantial gainful activity since the alleged onset of the alleged disability, (2) suffers from an impairment or combination of impairments that limit her ability to do basic work activities, and (3) whether the claimant's impairment is listed or equal to a listed requirement in Subpart P of Appendix 1. 20 C.F.R. § 404.1520(b), (c), (d). If the impairment is not listed in Subpart P of Appendix 1, step four requires the decision maker to calculate the claimant's RFC. 20 C.F.R §§ 404.1520(e), 416.920(e). If an RFC assessment indicates that a claimant is capable of performing past relevant work then the claimant is presumed not disabled. 20 C.F.R § 404.1520 (e), (f).

If the claimant is not capable of performing their past relevant work the burden then shifts to the decision maker to determine in step five whether "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Williams*, 844 F.2d at 751 (quoting *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)) (internal quotations omitted); *see also* 20 C.F.R. § 404.1520 (g).

## III. BACKGROUND

*A. Medical Evidence*

Plaintiff presents a history of chronic foot pain, joint pain, severe arthralgias, weakness, severe fatigue, dry eyes, dry skin, and depression. (R. 396.) She asserts that these symptoms are a result of her suffering from Hashimoto's thyroiditis, hypothyroidism, Raynaud's syndrome, Sjogren's syndrome, possible lupus, ileostomy, small fiber neuropathy, colonic inertia, adrenal insufficiency, rheumatoid arthritis, rectal neuropathy, and stress fractures in each foot. (R. 18.) Despite Plaintiff's extensive efforts to obtain medical evaluation regarding her complaints, a definite diagnosis of her symptoms remains unclear. (R. 396.) A sampling of the possible diagnoses found in the record include: Hashimoto's thyroiditis with hypothyroidism, Reynaud's syndrome, Sjogeren's syndrome, systemic lupus erythematosus, Reiter's-like syndrome, inflammatory arthritis, systemic sclerosis, rheumatoid arthritis, and fibromyalgia. (R. 18, 396.) The record, however, does confirm that Plaintiff has undergone procedures for which she is "status post"[1] including Morton's neuroma nerve removal, hysterectomy, and silicone implant removal. (R. 168, 170, 266, 297.)

---

[1] "Status post" used in medical charting merely indicates a recent completion of a treatment.

The record's lack of clear diagnoses does not appear to be the result of an insufficiency of medical records or medical evaluation. It becomes evident upon review of the record that Plaintiff "has been seen by many, many, many doctors."[2] (R. 2-3, 396.) Furthermore, it appears as though these "many" doctors have made extensive efforts to not only obtain a clear diagnosis but also to treat her several complaints. Those efforts have included MRIs, X-rays, laboratory blood tests, extensive clinical observation, psychiatric evaluation, prescribed medications, assistive devices, and physical therapy. (Pl's Br. 3-7.) With the exception of a positive finding of higher than normal presence of ANA in Plaintiff's blood,[3] the majority of these tests have returned "unremarkable" or "normal" findings. (R. 20-25.) As a result, many of Plaintiff's treating physicians, including Dr. Connor, indicate that their treatments and diagnoses are primarily based on Plaintiff's complaints and presentment of symptoms. (R. 363, 400.)

## B. ALJ's Decision

In steps one and two of the sequential analysis for determining disability, the ALJ found that Plaintiff suffers from the following "severe" medical conditions: Hashimoto's thyroiditis, bilateral Morton's neuroma status post nerve removal, symptoms of connective tissue diseases of unknown etiology, depression, and obesity. (R. 19.) The ALJ dismissed Plaintiff's other alleged impairments on the grounds that the evidence of record "does not support that these impairments are medically determinable." (R. 19.)

At step three the ALJ determined that Plaintiff's medically determinable impairments were

---

[2] Plaintiff's treating physicians include: Paul E. Mondolfi, John V. Marymont, John C. Anigbogu, Barry Liberoni, Holly J. Jones, Thomas K. Conner, Brenden R. White, Bradley V. Fellows, Joseph D. Jensen, Richard Middleton, and Richard B. Gremillion. (R. 2 – 3.)

[3] Dr. Gremillion notes that this is consistent with someone who has had silicone breast implants. (R. 369).

not severe enough to meet or equal the requirements listed in Appendix 1 Subpart P. (R. 19.) Accordingly, the ALJ proceeded to calculate Plaintiff's RFC in step four, at which point the ALJ engaged in a six-page analysis of the relevant evidence in the record including the opinions from Plaintiff's treating physicians, the opinions of state agency non-examining physicians, and her own statements as to her pain and symptoms. (R. 20- 25.) Following his analysis, the ALJ concluded that Plaintiff's RFC during the relevant time period was that of a *full range of sedentary exertional level, unskilled work* with the following limitations:

> Such work could not require: lifting more than 5-10 pounds at a time; lifting or carrying lighter articles weighing more than 3-4 pounds on an occasional basis; standing or walking more than 15 minutes at a time, more than 2 hours in an 8 hour work-day; sitting more than 45 minutes at a time, or more than 6 hours in an 8 hour work-day; sitting, standing or walking more than at will, i.e. the 'at will/sit/stand option', which would be exercised occasionally; bending, stooping, or squatting; frequently handling, reaching or fingering; work on the floor (no kneeling, crawling, crouching, etc.); stair climbing (a few steps not precluded); overhead lifting or reaching; working in an area without a restroom nearby for quick access; work at more than a low stress level; work at more than a low concentrations level; and work at more than a low memory level.

(R. 26.)

Following the RFC assessment, the ALJ deferred to an impartial Vocational Expert ("VE") to assist him in carrying his burden at step five. (R. 28, 815-19.) The ALJ asked the VE to evaluate a person with the same hypothetical limitations as Plaintiff including Plaintiff's age, education, past relevant work experience and RFC as determined by the ALJ. (R. 28, 815-16.) The VE found that Plaintiff *was not* capable of past relevant work *but was* capable of making vocational adjustments to work within the realm of sedentary exertional level, unskilled work. (R. 28, 817.) The VE then identified three possible jobs that exist in substantial numbers within the

national economy that he considered consistent with the hypothetical posed by the ALJ. (R. 28, 817.) Those jobs were (1) a surveillance systems monitor, for which there are 125,000 jobs in existence, (2) a touch-up screener, for which there are 105,000 jobs in existence, and (3) a semi-conductor bonder for which there are 70,000 jobs in existence. (R. 28, 817.) The VE also suggested that the number of jobs in existence be reduced by 15% to accommodate Plaintiff's unique limitations. (R. 28-29, 817.) In his decision, the ALJ represented the VE's testimony as being consistent with the guidelines in the Dictionary of Occupational Titles. (R. 29.)

## IV. DISCUSSION

### A. *ALJ's Evaluation of Dr. Connor's Opinion*

Plaintiff claims that the ALJ gave too little weight to Dr. Connor's evaluation of her RFC and accuses the ALJ of improperly speculating "in his lay opinion" that portions of Dr. Connor's evaluation are not supported by the record. (Pl's Br. 14.) In addition, Plaintiff claims that the ALJ was not sufficiently specific in his decision as to the reasons for the weight he was assigning to Dr. Connor's opinion. (Pl's Br. 14.) The Court disagrees with both claims.

An ALJ has discretion with regard to his assessment of treating physician opinions. *See* SSR 96-5p, 20 C.F.R. § 404.1427(d), (e)(2). In *Kochase v. Astrue*, the court acknowledged that opinions from any medial source must be carefully considered and must never be ignored. 2008 WL 852123 at *3 (D. Kan. Mar. 28, 2008). The court also noted that "in the determination of issues reserved to the Commissioner, such as opinions regarding . . . [a] plaintiff's RFC . . . treating source opinions are not entitled to special significance or controlling weight." *Id.* (citing SSR 96-5p). Rather, if an opinion lacks sufficient support or is inconsistent internally or with

other evidence, an ALJ may assign weight to the opinion or, if appropriate, completely reject the opinion. *See White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001); *Kay v. Barnhart*, 148 Fed. Appx. 711, 713 (10th Cir. 2005); 20 C.F.R. § 404.1527(d)(2). When determining what, if any, weight an opinion is entitled to, the Code of Federal Regulations provides six factors[4] for an ALJ to consider. 20 C.F.R. § 404.1527(d). If the ALJ chooses to completely reject a treating source's opinion he must give "specific legitimate reasons for doing so." *Kay*, 148 Fed. Appx. at 713. Otherwise, an ALJ need only be sufficiently specific to make clear the reasons for the weight being assigned to a treating physician opinion so as to provide any subsequent reviewers the opportunity to conduct meaningful review. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Meaningful review can be obtained without requiring the ALJ to explicitly discuss each factor listed in § 404.1527(d). *Taylor v. Astrue*, 2008 WL 467807 at *5 (10th Cir. Feb. 22, 2008) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007)).

In his decision, the ALJ explicitly states that he cannot accept Dr. Connor's assessment with regard to the "limitations in [Plaintiff's] ability to use her hands, arms, and fingers as there is no objective evidence[5] to support these limitations." (R. 27.) To support this conclusion, the ALJ specifically references Dr. Connor's notes indicating that his assessment was based primarily on "patient report." (R. 27, 400.) However, as the government points out, it does not

---

[4] These factors include: (1) the treatment relationship, (2) the examining relationship including the length of the treatment relationship and the frequency of examination, (3) the supportability of the opinion by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) the degree of specialization of the source, and (6) any other relevant factors that are brought to the attention of the decision maker. 20 C.F.R. § 404.1527(d).

[5] In his decision, the ALJ details the collective lack of objective evidence obtained from Plaintiff's other treating physicians prior to making this statement. (R. 20-23.)

appear as though the ALJ completely rejected Dr. Connor's opinion. (Gov't Br. 15-16.) In his decision, the ALJ concedes that Plaintiff is capable of less than the full range of sedentary work, which is consistent with Dr. Connor's assessment of Plaintiff's RFC. (R. 27, 400.) In addition, the record shows that the ALJ gave significant weight to Dr. Connor's RFC assessment when calculating the RFC found in his own decision. (R. 26.) Dr. Casner, the only other doctor to conduct a RFC assessment of Plaintiff's condition, concluded that she had no established exertional, postural, manipulative, visual, communicative, or environmental limitations. (R. 388-393.) By comparison, the RFC reflected in the ALJ's decision incorporates and acknowledges limitations regarding exertion, posture, and manipulation and is thus far more reflective of Dr. Connor's assessment than Dr. Casner's assessment.[6] (R.26.)

Additionally, Plaintiff relies on *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.

---

[6] Keeping in mind that it is not the province of this court to replace its discretion for that of the ALJ's, the following information serves the purpose of detailing the deference that the ALJ gave to both Dr. Connor's RFC assessment and Plaintiff's testimony. In the record, Dr. Gremillion states that Hashimoto's thyroiditis could be the result of her medications. (R. 365.) This could be considered substantial evidence sufficient to rule out Hashimoto's as an actual impairment. Social Security Act § 223(d)(5)(A), as amended, 42 U.S.C § 423(d)(5)(A) (stating that medical signs and findings must establish that an impairment is the result of anatomical, physiological, or psychological abnormalities). In addition, the ALJ was very generous to even list Plaintiff's "status post" nerve removal as an impairment. (R. 19.) Generally, "status post" means only that an individual has had a procedure and recovered. The record indicates that following the surgery Plaintiff reported that her symptoms had resided. (R. 277) As such, the only significant effect of her being "status post" would be external scarring. Lastly, the ALJ includes "connective tissue disorders of unknown etiology" as one of Plaintiff's impairments. (R. 19.) The ALJ's description of the impairment as being of "unknown etiology" internally indicates that there is a lack of objective medical findings sufficient to show the actual cause of these symptoms. This too could be considered substantial evidence sufficient to exclude it from Plaintiff's RFC considerations. Social Security Act § 223(d)(5)(A), as amended, 42 U.S.C. § 423(d)(5)(A) (stating that an individual must establish the existence of her symptoms through "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment . . . .").

2003), to support her claim that the ALJ's decision lacked specificity regarding its treatment of Dr. Connor's opinion. (Pl's Br. 14.) In *Watkins*, however, the court found that the ALJ failed to provide *any* indication as to the weight that was being assigned to a treating physician's opinion. 350 F.3d at 1300. Accordingly, the *Watkins* court remanded because of *its own* inability to properly review such a decision. *Id.* Unlike *Watkins*, the ALJ in this case specifically indicates the portion of Dr. Connor's opinion that he rejects as well as his reason for doing so. (R. 27.)

This Court has sufficient information to conduct a meaningful review and, therefore, remand is unnecessary. Upon review, the record as a whole contains glaring inconsistencies regarding the diagnoses and treatments employed by Plaintiff's several treating physicians, including Dr. Conner. The one area that does appear to be consistent is that few, if any, of Plaintiff's treating physicians acknowledge the presence of objective medical findings to support their treatments. In such a case, the relevant law affirmatively grants an ALJ the prerogative to conduct an evaluation of the evidence as a whole and make a decision based his findings. As detailed in the forgoing discussion, the ALJ carried out this prerogative. The ALJ's findings were supported by substantial evidence, consistent with proper legal standards, and sufficiently specific to provide meaningful review by this Court. Accordingly, the Court affirms the ALJ's decision against Plaintiff's claims of improper speculation and lack of specificity.

## B. ALJ's Determination of Claimant's Credibility

In *Kepler v. Chater*, the Tenth Circuit stated that "credibility determinations are peculiarly the province of the finder of fact, and we will not upset determinations when supported by substantial evidence." 68 F.3d 387, 391 (10th Cir. 1995). The Tenth Circuit has

explicitly maintained that an ALJ's findings "warrant particular deference" because

> [t]he ALJ enjoys an institutional advantage in making the type of determination at issue here. Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor . . . of the claimant in a direct and unmediated fashion.

*White*, 287 F.3d at 910.  Credibility determinations, however, cannot be based on intangible or intuitive reasons, but "must be grounded in evidence and articulated in the determination or decision."  SSR 96-7p, 1996 WL 374186, at *4; *see also Kepler*, 68 F.3d at 391.  "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff argues that the ALJ failed to provide a sufficient narrative discussion explaining how specific evidence supports his conclusion regarding her lack of credibility.  (Pl's Br. 17, Pl's Reply 5) (relying on *Kepler v. Chater*, 68 F.3d at 391-92  (stating that failure to connect the evidence to credibility findings constitutes reversible error)). In making this claim, Plaintiff represents the following as the ALJ's "entire analysis" of her credibility:

> In addition, the claimant's statements concerning her impairments and her ability to work are not entirely credible in light of the claimant's own description of her activities and lifestyle, the degree of medical treatment required, and the reports of the treating and examining practitioners.

(Pl's Br. 17) (quoting the ALJ's decision (R. 24.)).

An examination of the record does not support this argument.  In fact, the ALJ goes to great lengths to detail the specific inconsistencies between Plaintiff's testimony and that of other evidence in the record.  (R. 20-25.)  For example, the ALJ noted that Plaintiff testified that she

has small fiber neuropathy yet diagnostic tests showed no evidence of this or other peripheral neuropathies. (R. 24, 546-47, 788.) The ALJ also observed that Plaintiff reported that she left her job in February 1998 because of illness, but her employer reported that she left because of company downsizing. (R. 26, 118, 150.) The ALJ further noted the inconsistencies in the record regarding the continuity of Plaintiff's alleged period of disability by citing specific notations made by her treating physicians indicating periods where she either engaged in significant exertional activity[7] or had no complaints upon examination.[8] (R. 25.) By including such detail in his analysis, the ALJ provided sufficient narrative explaining the specific evidence that led to his conclusions regarding Plaintiff's lack of credibility.

Plaintiff also advocates a specific test that would require an evaluation of Plaintiff's subjective claims as they apply to the objectively established impairments from which Plaintiff suffers. (Pl's Br. 16-17, Reply 4-5) (relying on *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (offering a three-prong test to determine whether a claimant's pain is objectively established and disabling)); *see also* SSR 96-7p. However, such an approach is unnecessary because the ALJ's evaluation of Plaintiff's credibility discredits her testimony in a general sense. In his decision, the ALJ cites not only the inconsistency between Plaintiff's testimony and the objective findings of her various treating physicians, but also to inconsistencies regarding

---

[7] The record indicates that Dr. Liberoni noted in a progress report on Plaintiff's condition that she had pulled a muscle in her neck "working quite hard at home, getting her new house ready." (R. 309.)

[8] The record indicates that Dr. Gremillion noted that Plaintiff had no complaints following a November 1999 evaluation, almost a year after her claimed date of disability. (R. 25.)

evidence of Plaintiff's daily activities,[9] the continuity of her pain,[10] and the circumstances surrounding her leaving a job in February 1998.  (R. 25, 26); *see also* (R. 118, 150, 309).  It follows, therefore, that any findings of credibility required by a specific test may be satisfied by the ALJ's finding that Plaintiff's testimony generally lacks credibility.

The ALJ properly exercised his discretion in evaluating Plaintiff's credibility.  There is ample evidence indicating a lack of objective medical findings needed to support the claims made by Plaintiff.  The Court affirms the ALJ's findings regarding Plaintiff's credibility on the grounds that the forgoing discussion indicates that such findings are supported by substantial evidence and are consistent with proper legal standards.

## C. ALJ's Determination of Plaintiff's Credibility and Residual Functional Capacity

Plaintiff argues that the ALJ's findings regarding Plaintiff's credibility led to the ALJ calculating an inaccurate RFC.  (Pl's Br. 16.)  This argument however is premised on a finding that the ALJ's credibility findings were inappropriate.  Based on the foregoing discussion, the ALJ's findings were not inappropriate and thus did not contribute to an inaccurate assessment of Plaintiff's RFC.[11]

## D. ALJ's Error at Step-Five of the Sequential Analysis

Plaintiff argues that the ALJ did not meet his burden of proof at step five of the sequential evaluation, which requires the ALJ to show that there are a significant number of jobs within the national economy that an individual with Plaintiff's limitations could perform.  (Pl's

---

[9] *See supra*, note 6.

[10] *See supra*, note 7.

[11] *See supra*, note 5.

Br. 19.)  In conjunction with this, Plaintiff further claims that the ALJ's own RFC assessment indicates that Plaintiff should be found disabled.  (Pl's Br. 19.)

Plaintiff's argument is based on a technicality arising from the Social Security Rulings, the Federal Regulations, and the <u>Dictionary of Occupational Titles</u> ("DOT").  This technicality, however, appears to exploit a conflict between the ALJ's RFC assessment and his findings at step five of the sequential analysis.  Plaintiff points out that "most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger action."  (Pl's Br. 21) (citing SSR 83-10 and 83-14).  Plaintiff further asserts that any restriction on such use of hands and fingers constitutes a non-exertional limitation recognized by Federal Regulations as a lack of bilateral manual dexterity.  (Pl's Br. 21.)  As stated in the Code of Federal Regulations:  "[w]hen the inability to perform jobs requiring bilateral manual dexterity significantly compromises the only range of work for which the individual is otherwise qualified . . . a finding of disabled would be appropriate."  20 C.F.R pt. 404 Subpt. P, App. 2, § 201.00(h).

This technicality becomes problematic due to an inconsistency between the ALJ's hypotheticals to the VE and the ALJ's RFC determination.  In his examination of the VE, the ALJ asked the VE to identify unskilled sedentary jobs that could be performed by a person who, among other things, could not "*do more than* frequent reaching, handling, and fingering."  (R. 816.)  In his statement of Plaintiff's RFC, however, the ALJ limited Plaintiff to unskilled sedentary work, "except that such work *could not require* . . . frequently handling, reaching or fingering."  (R. 26.)  Failure to settle such a conflict may be grounds for reversal or remand.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

14

The significance of this conflict is best illuminated by examining the limitations set forth in the ALJ's RFC assessment and the jobs deemed appropriate for Plaintiff by the VE at step five.  The limitation imposed by the ALJ – that work for Plaintiff may not include "frequently handling, reaching or fingering"– on its face appears to establish that she has the non-exterional limitation of lacking bilateral manual dexterity.  As such, two of the three jobs recommended by the VE would be disqualified as potential work for Plaintiff.  The jobs of Semi-Conductor Bonder (*DOT* No. 726.685-066) and Touch-up Screener (*DOT* No. 726.684-110) both require bilateral manual dexterity.  The government concedes, therefore, that both of these jobs exceed Plaintiff's RFC.  (R. 20.)

Accordingly, the government concedes that the ALJ erred by not asking the VE if his testimony was consistent with the DOT so as to settle the conflict.  (Gov. Br. 20.)  However, the government asserts that the ALJ's failure is irrelevant because the job of surveillance system monitor is consistent with both the DOT and the ALJ's RFC assessment.[12]  (Gov. Br. 20.) According to the government, the presence of 106,250 (125,000 reduced by 15%) surveillance system monitor jobs within the national economy constitutes a substantial number.  (Gov't Br. 20-21) (citing *Cragie v. Bowen*, 835 F.2d 56 (3d Cir. 1987) (finding that 200 jobs in claimant's region a significant number); *Jenkins v. Bowen*, 861 F.2d 1083 (8th Cir. 1988) (finding 500 jobs in the claimant's region a significant number); *Martinez v. Heckler*, 807 F.2d 771 (9th Cir. 1986) (finding 3750 to 4250 jobs a significant number); *Allen v. Bowen*, 816 F.2d 600 (11th Cir. 1987) (finding 80,000 jobs in the national economy a significant number).  As such, the government

---

[12] The job of surveillance systems monitor (*DOT* No. 379.367-010) does not require bilateral manual dexterity.

15

argues that notwithstanding the ALJ's error, the result would have been the same, thus making the ALJ's error harmless. (Gov. Br. 21) (citing *U.S. v. Wacker*, 72 F.3d 1453, 1473 (10th Cir. 1995) (stating that error is harmless "unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect"); *Mickles v. Shalala*, F.3d 918, 921 (4th Cir. 1994) ("[ALJ] would have reached the same result notwithstanding his initial error").

As indicated above, the ALJ made an undisputed error at step five of the sequential process. However, the Tenth Circuit has acknowledged that harmless error can occur when applying the five-step sequential analysis and not be grounds for reversal. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005) (ruling that an error at step three was harmless in that the result would have been the same based on the ALJ's findings at steps four and five). In this case, the Court agrees that a finding that 106,250 jobs in the national economy is substantial. Accordingly, the Court upholds the ALJ's decision notwithstanding his error at step five. To rule otherwise would "needlessly prolong[] administrative proceedings." *Id.* at 730.

## V. CONCLUSION

Based on the forgoing discussion, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 8th day of July, 2008.

_____
Dee Benson
United States District Court Judge